IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULIE FLAHERTY a/k/a JULIANN FLAHERTY, Individually, and as Administratrix of the Estate of EDITH LISANTI, DECEASED,

    Plaintiff,

vs.

ALLEGHENY COUNTY, as owner and operator of JOHN J. KANE REGIONAL CENTER-SC d/b/a KANE SCOTT CENTER, a skilled nursing facility,

    Defendant.

No.:   2:20-cv-1491

## PLAINTIFF'S COMPLAINT

AND NOW, comes the Plaintiff, Julie Flaherty a/k/a Juliann Flaherty, Individually, and as Administratrix of the Estate of Edith Lisanti, by and through her undersigned counsel, Elizabeth A. Chiappetta, Esquire; Allison H. Greene, Esquire; and the law firm of Robert Peirce & Associates, P.C., and files this Complaint for the Defendant's violations of duties imposed upon them under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 1396r, *et seq.*, and the implementing regulations found at 42 C.F.R. § 483, *et seq,* and for violations of the Constitution of the United States of America under Amendment 14, enforceable under 42 U.S.C. § 1983, against the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center-SC d/b/a Kane Scott Center, a skilled nursing facility.

### Nature of Action

1.    This is a proceeding under 42 U.S.C. § 1983 to remedy violations of duties under the Omnibus Budget Reconciliation Act of 1987, the Federal Nursing Home Reform Act, the

1

Federal Nursing Home Regulations, as found at 42 C.F.R. § 483, and the Constitution of the United States of America.

## Jurisdiction and Venue

2. As the instant case presents issues of Federal Law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C. § 1331.

3. Venue lies within this judicial district, since all of the actions complained of herein occurred within the Western District of Pennsylvania.

## Parties

4. Plaintiff Julie Flaherty a/k/a Juliann Flaherty is an adult individual who currently resides at 225 Cottonwood Lane, Wexford, Allegheny County, Pennsylvania 15090.

5. Plaintiff Julie Flaherty a/k/a Juliann Flaherty is the adult daughter of the Decedent, Edith Lisanti.

6. Plaintiff Julie Flaherty a/k/a Juliann Flaherty was duly appointed as Administratrix of the Estate of Edith Lisanti by the Register of Wills of Allegheny County on December 5, 2018.

7. Defendant Allegheny County is a governmental agency with its government offices located at 436 Grant Street, Pittsburgh, Allegheny County, Pennsylvania, Pennsylvania 15219.

8. John J. Kane Regional Center-SC d/b/a Kane Scott Center is a skilled nursing facility with its principal place of business located at 300 Kane Boulevard, Pittsburgh, Allegheny County, Pennsylvania 15243.

9. Defendant Allegheny County owns and operates John J. Kane Regional Center-SC d/b/a Kane Scott Center.

10. As such, at all times relevant hereto, John J. Kane Regional Center-SC d/b/a Kane Scott Center is a governmental agency acting under the color of state law.

11. At all times relevant hereto, John J. Kane Regional Center-SC d/b/a Kane Scott Center operated as a "long term care nursing facility" as that term is defined in 35 P.S. §448.802A.

12. Accordingly, John J. Kane Regional Center-SC d/b/a Kane Scott Center is a "licensed professional" as that term is defined in 40 P.S. § 1303.503.

13. At all times relevant hereto, John J. Kane Regional Center-SC d/b/a Kane Scott Center operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. §1395i-3.

14. At the time of the incidents pled herein, John J. Kane Regional Center-SC d/b/a Kane Scott Center was acting under the control of Allegheny County, and was acting by and through its authorized agents, servants and employees then and there acting within the course and scope of their employment.

15. Defendant Allegheny County is a county government organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Allegheny County, acting through John J. Kane Regional Center-SC d/b/a Kane Scott Center was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the John J. Kane Regional Center-SC d/b/a Kane Scott Center facility and was responsible for the appointment, training, supervision and conduct of all John J. Kane Regional Center-SC d/b/a Kane Scott Center personnel. In addition, at all relevant times, Defendant Allegheny County was responsible for enforcing the rules of the John J. Kane Regional Center-SC d/b/a Kane Scott Center facility and for ensuring that personnel employed in the facility obey the Constitution and laws of the United States and of the Commonwealth of Pennsylvania.

16. Hereinafter, Allegheny County and John J. Kane Regional Center-SC d/b/a Kane Scott Center will collectively be referred to as "Kane".

**Statement of Claims**

17. The facts relevant to the causes of action stated herein were known, or in the exercise of due diligence, should have been known to Defendant during Edith Lisanti's residency at Kane, or upon her discharge from its facility.

18. At all times relevant hereto, Kane operated as a "skilled nursing facility" as that term is defined at 42 U.S.C. § 1395i-3.

19. At all times relevant hereto Defendant Kane was acting independently and by and through its authorized agents, servants and/or employees, who were then and there acting within the course and scope of their employment.

20. No other actions have been commenced regarding the injuries Ms. Lisanti sustained at Kane.

21. Ms. Lisanti was admitted to Kane on June 8, 2017 following a brief stay at UPMC Passavant.

22. Ms. Lisanti had a medical history of advanced dementia, right parietal cerebrovascular accident with aphasia, and diabetes, among other conditions.

23. Ms. Lisanti was also visually impaired, non-verbal, and partially deaf.

24. Ms. Lisanti also had a feeding tube and required tube feeds.

25. As a result of these conditions, Ms. Lisanti was unable to communicate verbally.

26. The first year of Ms. Lisanti's stay at Kane was mostly unremarkable.

27. On June 2, 2018, Ms. Lisanti's daughter, Julie Flaherty, visited Ms. Lisanti, who was not suffering any leg pain; nor did she have any facial abrasions.

28. On June 4, 2018, Ms. Lisanti was transferred to UPMC Passavant for a gastronomy tube (G-tube) replacement.

29. While she was at UPMC Passavant, a UPMC Passavant nurse called Kane staff at 3:20 p.m. to report that Ms. Lisanti's right ankle was swollen, red, and painful.

30. At 5:30 p.m., Ms. Lisanti returned to Kane for x-ray imaging for her right ankle.

31. Ms. Lisanti had a red scab on her nose and her right ankle was swollen and red.

32. Ms. Lisanti was also having bilateral leg contractures.

33. The x-ray, taken on June 4, 2018, revealed that Ms. Lisanti had suffered a mildly displaced/angulated fracture involving the distal fibular shaft, just above the level of the tibiotalar joint.

34. Ms. Lisanti's medical records are entirely devoid of any mention of a fall or accident, including when she fell, how she fell, and the circumstances of her fall.

35. On June 5, 2018, a Kane physician visited Ms. Lisanti to evaluate her injuries post-fall and noted that Ms. Lisanti's right ankle was slightly swollen and reddened.

36. No new orders were given.

37. Furthermore, Ms. Lisanti's care plan was not updated to reflect her fall.

38. On June 6, 2018, Ms. Lisanti saw Dr. Weiss, an orthopedist, for evaluation of her right lower leg fracture.

39. Dr. Weiss diagnosed Ms. Lisanti with a right lateral malleolus fracture and fit her with an aircast and boot for her right foot.

40. On August 31, 2018, Kane nursing staff noted that Ms. Lisanti's urine was dark and foul smelling.

41. On August 31, 2018, a urinalysis was ordered and revealed increased number of white blood cells, leukocytes esterase, and bacteria, which is indicative of infection.

42. That same day, on August 31, 2018, Ms. Lisanti's physician placed an order to increase the free water via G-tube to 30 cc every hour.

43. On September 4, 2018, Ms. Lisanti was moaning in pain.

44. On September 4, 2018, Ms. Lisanti's daughter, Julie Flaherty, insisted to Kane nursing staff that her mother had a urinary tract infection.

45. However, only a note was left for Ms. Lisanti's physician.

46. No new orders were placed.

47. Further still, there is nothing in the medical records indicating that Ms. Flaherty's concerns for Ms. Lisanti were acknowledged by a physician.

48. On September 5, 2018, Ms. Lisanti was alert to herself, but was agitated and combative.

49. Ms. Lisanti's urine remained dark and foul smelling.

50. Again, on September 5, 2018, Julie Flaherty again raised her concerns about Ms. Lisanti's condition and urinary symptoms to Kane nursing staff.

51. Ms. Lisanti underwent a repeat CBC, which revealed that her white blood cell count had risen to 14,500.

52. Ms. Lisanti's baseline white blood cell count was 12,000.

53. An increased white blood cell count, pain, dark and foul smelling urine, and agitation are all signs and symptoms of a urinary tract infection.

54. It was not until September 8, 2018 that the physician at Kane ordered Cipro to treat a urinary tract infection for Ms. Lisanti.

55. Cipro is an antiobiotic.

56. On September 11, 2018, Ms. Lisanti had a medium, bloody emesis with blood in it.

57. Ms. Lisanti remained confused and agitated.

58. On September 11, 2018, Ms. Lisanti's white blood cell count was 11,500.

59. On September 12, 2018, Ms. Lisanti was noted as "stable" despite a medium emesis the day prior.

60. On October 23, 2018, Ms. Lisanti was agitated "most of the time" and constantly pulling on her hands.

61. It was specifically noted in the Kane medical chart that Ms. Lisanti did not exhibit any signs of dehydration or infection.

62. On October 29, 2018, a physician at Kane saw Ms. Lisanti due to her right eye drainage; however, no other medical issues were discussed with the physician at that visit, including any urinary tract infection symptoms.

63. On October 29, 2018, Ms. Lisanti's vital signs were taken and revealed Ms. Lisanti's temperature was 96.4 and her blood pressure was 148/88.

64. These were the last charted vital signs for Ms. Lisanti.

65. There were no new orders for Ms. Lisanti's care from September 29, 2018 until November 4, 2018.

66. There were no new progress notes for Ms. Lisanti's care after October 30, 2018.

67. On October 30, 2018, Ms. Lisanti received a nutrition assessment, which revealed that Ms. Lisanti remained NPO and weighed 115.6 lbs, a significant decrease in her weight.

68. On October 30, 2018, Ms. Lisanti was noted to be confused and agitated.

69. On November 4, 2018, Ms. Lisanti had a decreased responsiveness to her daughter and had shallow respirations.

70. Ms. Lisanti's vital signs were measured and her temperature was 98.4, her blood pressure was 78/45, and her blood sugar was "HIGH".

71. Ms. Lisanti was transferred via ambulance to UPMC Passavant, where she was diagnosed with urinary tract infection, diabetic ketoacidosis, acute renal failure, dehydration, hyperglycemia, and hypotension.

72. UPMC Passavant specifically noted that Ms. Lisanti had a three day history of less responsiveness than baseline.

73. However, this is not documented anywhere in Ms. Lisanti's medical records from Kane.

74. On November 5, 2018 Ms. Lisanti passed away at UPMC Passavant as a result of urosepsis.

## COUNT I

### Deprivation of Civil Rights Enforceable Via 42 U.S.C. § 1983

75. All of the preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

76. Defendant Kane is an agent of the Commonwealth of Pennsylvania, and at all times relevant to this Complaint was acting under the color of state law.

77. Defendant Kane is bound generally by the Omnibus Budget Reconciliation Act of 1987 ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA") which was contained within the Omnibus Reconciliation Act of 1987. See 42 U.S.C. § 1396r, 42 U.S.C. § 1396(a)(w), as incorporated by 42 U.S.C. § 1396r.

78. Defendant Kane is also bound generally by OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, *et seq.*, which served to define specific statutory rights set forth in the above-mentioned statutes.

79. The specific detailed regulatory provisions, as well as the statutes in question, create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

80. Upon information and belief, Kane, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Kane failed to implement and follow appropriate custom and policies and/or, in the alternative, that Kane had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

81. Defendant Kane, in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the aforementioned regulations, as follows:

   a. By failing, as a custom and policy, to care for patients, including Ms. Lisanti, in a manner that promoted maintenance or enhancement of her life, as required by 42 C.F.R. § 483.24[1] and 42 U.S.C. § 1396r(b)(1)(A);

   b. By failing, as a custom and policy, to notify the family members of residents, including Ms. Lisanti, concerning a significant change in condition as required by 42 C.F.R. § 483.10;

   c. By failing, as a custom and policy, to promote the care of residents, including Ms. Lisanti, in a manner and in an environment that maintained or enhanced her dignity, as required by C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(1)(A);

   d. By failing, as a custom and policy, to develop a comprehensive Care Plan and assessment for residents, including Ms. Lisanti, as required by 42 C.F.R. § 483.21 and 42 U.S.C. § 1396r(b)(2)(A);

---

[1] For purposes of the within pleading, all references to the OBRA Regulations are to those that were in effect from June 5, 2018 – November 5, 2018, the dates of Ms. Lisanti's injuries.

e. By failing, as a custom and policy, to provide residents, including Ms. Lisanti, the necessary care and services to allow her to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(3)(A);

f. By failing, as a custom and policy, to provide residents, including Ms. Lisanti, the necessary care and services to preclude them from experiencing a reduction in range of motion and/or providing appropriate treatment and services to increase range of motion, as required by 42 C.F.R. § 483.25(c) and 42 U.S.C. § 1396r(b)(3)(A);

g. By failing, as a custom and policy, to provide dietary services that assured that Ms. Lisanti received her daily nutritional dietary needs, as required by 42 C.F.R. § 483.60 and 42 U.S.C. § 1396r(b)(4)(A)(iv);

h. By failing to maintain Ms. Lisanti's medical records, as required by 42 C.F.R. § 483.70(i) and 42 U.S.C. § 1396r(b)(6)(C);

i. By failing, as a custom and policy, to periodically review and revise a patient's or resident's written Plan of Care, including Ms. Lisanti, by an interdisciplinary team after each of the resident's or patient's assessments, as described by 42 U.S.C. § 1396r(b)(3)(A), as required by 42 U.S.C. § 1396r(b)(2)(C);

j. By failing, as a custom and policy, to conduct an assessment of a patient or resident, including Ms. Lisanti, as required by 42 U.S.C. § 1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition, as required by 42 U.S.C. § 1396r(b)(3)(C)(i)(II);

k. By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising Ms. Lisanti's Plan of Care, as required by 42 U.S.C. § 1396r(b)(3)(D);

l. By failing, as a custom and policy, to ensure that patients or residents, including Ms. Lisanti, were provided medically related social services to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(4)(A)(ii);

m. By failing, as a custom and policy, to ensure that the personnel responsible for the care of residents was properly certified and/or re-certified as being qualified to perform necessary nursing services, as required by 42 U.S.C. § 1396r(b)(4)(B);

n. By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including Ms. Lisanti, to attain or maintain the highest practicable physical, mental and psycho-social well-being, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396r(b)(4)(C);

o. By failing, as a custom and policy, to maintain clinical records on all residents, including Ms. Lisanti, including but not limited to the Plans of Care and resident's risk assessments, as required by 42 C.F.R. § 1396r(b)(6)(C);

p. By failing, as a custom and policy, to ensure that Kane was administered in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including Ms. Lisanti, to attain or maintain their highest practicable level of physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.70, 42 U.S.C. § 1396r(d)(A) and 42 U.S.C. § 1396r(d)(1)(A) and 42 U.S.C. § 1396r(d)(1)(C);

q. By failing, as a custom and policy, to ensure that the administrator of Kane met the standards established under 42 U.S.C. § 1396r(f)(4), as required by 42 U.S.C. § 1396r(d)(1)(C);

r. By failing, as a custom and policy, to ensure that Kane was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including Ms. Lisanti, and in operating such a facility as Kane, as required by 42 U.S.C. § 1396r(d)(4)(A); and,

s. By failing, as a custom and policy, to ensure that Kane's administrator and director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Ms. Lisanti, in derogation of 42 C.F.R. § 483.75 and 42 U.S.C. § 1396r(b)(B).

82. In particular, and as further evidence that the Kane's failures were systemic and part of a custom and policy, Kane has been cited numerous times between July 20, 2017 and July 9, 2018 for regulatory violations directly relevant to the allegations in Plaintiff's Complaint.[2] The regulations at issue amplify the mandates of the FNHRA. For example:

    a. Kane has been cited for violations of 42 CFR § 483.25, Quality of Care, on several occasions during this time period. Included among these citations are violations of regulations relating to the failure to follow physicians' orders and failure to acquire physician orders. These failures are pertinent with respect to the allegations concerning Ms. Flaherty's allegations against Kane.

    b. Kane has been cited for violation of 42 CFR § 483.20, Resident Assessment, on several occasions during this time period. These failures specifically relate to the failure to properly assess a resident. These failures are pertinent with respect to the allegations concerning Ms. Flaherty's allegations against Kane.

    c. Kane has been cited for violations of 42 CFR § 483.15[3], Quality of Life, on several occasions during this time period. These failures pertain to Kane's inability to properly care for and provide appropriate care for residents. These failures are pertinent with respect to the allegations concerning Ms. Flaherty's allegations against Kane.

83. The aforementioned violations indicate that Kane, as a policy and/or custom was deliberately indifferent to Ms. Lisanti's needs, and as such, and in conjunction with other conduct described herein, deprived her of federally guaranteed and protected rights.

---

[2] Plaintiff has not attached the aforementioned citations as an exhibit due to their size. These citations are available at the Pennsylvania Department of Health's website at: http://sais.health.pa.gov/commonpoc/Content/PublicWeb/ltc-survey.asp?Facid=364902&PAGE=1&NAME=JOHN+J+KANE+REGIONAL+CENTER+SCOTT+TOWNSHIP&SurveyType=H&COUNTY=ALLEGHENY

[3] Now referred to as 42 CFR § 483.24.

84. The repeated and systemic failures in the preceding Paragraphs, combined with the failures identified in Paragraphs 81 (a)-(q) demonstrate that Kane, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Kane failed to implement and follow appropriate customs and policies and/or, in the alternative, that Kane had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

85. As a proximate result of Defendant Kane's actionable derogation of its regulatory and statutory responsibilities as above-described, Plaintiff's Decedent, Edith Lisanti, was injured as previously referenced and suffered pain and distress as a result of the poor care and treatment which allowed her to suffer harm, as described herein.

86. As such, Plaintiff's Decedent, Edith Lisanti, suffered, and her Estate is now entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. 1983 and 42 U.S.C. § 1988:

   a. Money expended for hospital, medical, surgical, and nursing expenses incident to the injuries that Ms. Lisanti suffered as a result of the treatment and care rendered by Defendant until the time of her death;

   b. Pain, suffering, embarrassment, humiliation, inconvenience, anxiety, loss of enjoyment of life and nervousness of Ms. Lisanti; and,

   c. Other losses and damages permitted by law.

WHEREFORE, the Plaintiff, Julie Flaherty, Individually and as Administratrix of the Estate of Edith Lisanti, demands compensatory damages from the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center-SC d/b/a Kane Scott Center, a skilled nursing facility, in an amount in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

## COUNT II

## **WRONGFUL DEATH**

87. All of the preceding Paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

88. As a direct and proximate result of Kane's conduct as set forth above, Plaintiff's Decedent, Edith Lisanti, was injured and suffered conscious pain and suffering before dying on November 5, 2018.

89. As a proximate result of the conduct of Kane, as aforementioned, Plaintiff Julie Flaherty, and those entitled by law to recover for the wrongful death of Edith Lisanti, seek damages as follows:

    a. She/They have expended money for surgical, nursing and hospital expenses related to the death of Ms. Lisanti;

    b. She/They have expended money for funeral and Estate expenses because of the death of Ms. Lisanti;

    c. She/They have been denied, and have forever lost the services, assistance, guidance, counseling, companionship of society of Ms. Lisanti; and,

    d. She/They have been, and will forever be, deprived of the financial support and all pecuniary benefits which they would have received from Ms. Lisanti.

WHEREFORE, the Plaintiff Julie Flaherty a/k/a Juliann Flaherty, Individually and as Administratrix of the Estate of Edith Lisanti, demands compensatory and consequential damages from the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center-SC d/b/a Kane Scott Center, a skilled nursing facility, in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

**A JURY TRIAL IS DEMANDED**.

Respectfully submitted,

ROBERT PEIRCE & ASSOCIATES, P.C.

By: /s/ Allison H. Greene, Esquire
    ALLISON H. GREENE, ESQUIRE
    Pa. I.D. No.: 325648
    707 Grant Street, Suite 125
    Pittsburgh, PA 15219
    (412) 281-7229
    agreene@peircelaw.com